UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| ODRAYE G. JONES n/k/a MALIK ALLAH-U-AKBAR, | : | CASE  NO. 1:03 CV 1192 |
| | : | |
| Petitioner, | : | |
| | : | JUDGE DAVID A. KATZ |
| vs. | : | |
| | : | |
| MARGARET BRADSHAW, Warden, | : | **MEMORANDUM OF OPINION & ORDER** |
| | : | |
| Respondent. | | |

Before the Court are the following:  (1) Respondent Warden Margaret Bradshaw's motion to transfer this case back to the Sixth Circuit for final resolution of Jones' Petition for Writ of Habeas Corpus (ECF No. 190); (2) Petitioner Odraye Jones' motion, through counsel, to expand discovery on his method-of-execution claim (ECF No. 191); and (3) Jones' pro se motion to waive his method-of-execution claim and proceed pro se (ECF No. 193).[1]  For the following reasons, the Court denies Jones' motion to proceed without counsel and holds the remaining motions in abeyance until the United States Supreme Court rules in the case *Glossip v. Gross*, Case No. 14-7955.

---

[1]        Jones has notified the Court that he legally changed his name to Malik Allah-U-Akbar on April 15, 2014.  (ECF No. 198.)  The Court will continue to refer to him as Jones in this Memorandum of Opinion and Order, however, for the sake of clarity and continuity.

## I.       Relevant Procedural History

### A.       Jones' Method-of-Execution Claim

Jones filed his Petition for Writ of Habeas Corpus in 2003.  (ECF No. 17.)  This Court

denied the Petition in 2007, certifying several issues for appeal to the Sixth Circuit.  (ECF No.

117.)  Jones appealed, and filed a request with the Sixth Circuit to expand the certificate of

appealability ("COA") to include his method-of-execution claim relating to lethal injection,

which the court granted in July 2008.  In doing so, the court noted the Supreme Court's recent

decision in *Baze v. Rees*, 553 U.S. 35, 61-63 (2008), in which a plurality of the Court held that

Kentucky's three-drug lethal injection execution protocol did not violate the Eighth Amendment

prohibition against cruel and unusual punishment, primarily because of its safeguards.  The *Baze*

Court left open the door, however, for further lethal injection challenges.  *See id.* at 61 (Roberts,

C.J., plurality); *id.* at 71 (Stevens, J., concurring in the judgment).  The Sixth Circuit concluded,

> *Baze*, therefore, does not foreclose Jones's Eighth Amendment claim
> should he be able to demonstrate that Ohio's safeguards are different than
> Kentucky's in an unconstitutional manner. . . .  Accordingly, by granting the COA
> we give counsel on both sides the opportunity to investigate the important
> question of whether Ohio's safeguards are materially different than Kentucky's.

(Case No. 07-3766; ECF No. 60-1 at 4.)

Jones next filed a motion to remand with the Sixth Circuit, requesting an opportunity to

conduct factual development on the lethal injection issue, or, in the alternative, to certify a

question to the Ohio Supreme Court as to whether there was a forum in the state court in which

to develop facts.  Respondent did not oppose a limited remand to this Court, but objected to the

certification to the Ohio Supreme Court.  On January 30, 2009, the Sixth Circuit ordered that the

case be remanded to this Court "for limited discovery and factual development of the lethal

2

injection issue." (ECF No. 128.) Shortly afterward, the Sixth Circuit remanded *Adams v. Bradshaw*, Case No. 1:05 CV 1886, another capital habeas case that was pending before this Court, for the same purpose.

Respondent moved to dismiss Jones' lethal injection claim on April 16, 2009, as it did in *Adams*, on the ground that it is not cognizable in a habeas corpus action. (ECF No. 134.) This Court denied the motion on September 8, 2009, holding, as it also did in *Adams* the same day, that the authority upon which Respondent relied predated *Baze*, and that, because the Sixth Circuit remanded this matter for a limited purpose, the Court had only limited jurisdiction and was therefore precluded from deciding the merits of Respondent's motion. (ECF No. 140.) Respondent appealed the denial of its motion to dismiss in *Adams*, and moved to stay both *Adams* and *Jones* during the pendency of the appeal, which this Court granted on March 4, 2010. (ECF No. 147.)

The Sixth Circuit granted Respondent's petition for leave to appeal in *Adams* on October 19, 2010, and issued its ruling on July 19, 2011. The court held that Adams' method-of-execution challenge was cognizable on habeas and remanded it to this Court in accordance with this Court's February 13, 2009 order. (Case No. 1:05 CV 1886; ECF No. 85.) The Sixth Circuit denied Respondent's petition for rehearing in *Adams* on September 7, 2011. (Case No. 1:05 CV 1886; ECF No. 86.)

This Court held a status conference regarding setting a scheduling order for the discovery on March 22, 2012, and issued the order on March 27, 2012. (ECF No. 156.) Discovery was then delayed several times by Jones' motions to remove counsel and waive his lethal injection claim, as described below. Once the Court resolved those issues, it issued a second scheduling

3

order for discovery on August 29, 2013, stating:

> 2.    The parties agree to be bound by the Protective Order issued in *Cooey v. Strickland*, Case No. 04 CV 1156, in the United States District Court for the Southern District of Ohio, on October 8, 2008 (ECF No. 413), and applicable to any related cases currently pending before that Court.
>
> 3.    The Attorney General's Office will deliver to Petitioner's habeas counsel within thirty (30) days of this Order all discovery materials it produced to the plaintiffs in *Cooey v. Strickland* (and any related litigation), in electronic form.
>
> 4.    The Warden will provide Petitioner's habeas counsel with copies of transcripts of all hearings conducted in *Cooey v. Strickland* (and any related litigation), at public expense.
>
> 5.    The parties will file appropriate pleadings with the Court within one hundred and eighty (180) days after Petitioner's habeas counsel has received both the discovery material and transcripts.

(ECF No. 181.)  *Cooey v. Strickland*, in which more than 100 death row inmates are challenging

Ohio's lethal injection execution protocol under 42 U.S.C. § 1983, is now entitled *In re Ohio*

*Execution Protocol Litigation* ("*In re OEPL*"), Case No. 2:11 CV 1016, and is still pending in

the United States District Court for the Southern District of Ohio before Judge Gregory Frost.

Jones chose not to intervene in that case.

On August 12, 2014, after nearly a full year had passed since the parties began discovery

pursuant to the Court's scheduling order, the Court asked the parties to conclude discovery and

file whatever pleadings they deemed necessary.  (ECF No. 189.)  Now, Respondent has filed a

motion to transfer the case back to the Sixth Circuit, asserting that the Sixth Circuit's remand

order is "satisfied" because she has produced the discovery generated in *In re OEPL*.  (ECF No.

190 at 4.)  And Jones, through counsel, has filed a motion seeking to extend the discovery

deadline and opposing Respondent's motion to transfer.  He reports that Respondent has

4

produced more than 65,000 pages of documents on a rolling basis, the last production occurring on August 15, 2014.  (ECF No. 191 at 4-5.)  But he argues that because of the difficulties with a recent Ohio execution and Ohio's continuing changes in its lethal injection protocol, he is entitled to additional discovery.  (*Id*. at 5-8.)

On January 16, 2014, Ohio used a new and untested two-drug combination of midazolam and hydromorphone to execute Dennis McGuire.  The execution lasted 25 minutes, the longest in Ohio's recent history, with witnesses saying he gasped several times during the process.  States turned to midazolam after they ran out of the more powerful drugs they had been using (in Ohio, it was pentobarbital), in part because anti-death-penalty activists persuaded European pharmaceutical companies to stop selling the drugs to American state agencies responsible for carrying out executions.  States then began purchasing new drugs for executions domestically from compounding pharmacies, which are not regulated by the FDA.  Ohio recently passed secrecy laws to prevent public disclosure of the sources of its lethal injection drugs.[2]

On April 28, 2014, the Ohio Department of Rehabilitation and Correction ("ODRC") investigated the McGuire execution, finding it acceptable but revising its execution protocol nonetheless.  On May 27, 2014, Judge Frost, in *In re OEPL*, imposed a moratorium on executions in Ohio until August 15, 2014, "[i]n light of the need for discovery and necessary preparations related to the adoption and implementation of the new execution protocol that became effective April 28, 2014."  He later extended the moratorium until January 15, 2015, for

---

[2]      *See, e.g*., Alan Johnson & Mike Wagner, *Questions raised about the death penalty in Ohio*, Columbus Dispatch, March 9, 2015; Mark Berman, *Ohio drops controversial lethal injection drug, postpones upcoming execution*, Washington Post, January 9, 2015; Ben Crair, *2014 is Already the Worst Year in the History of Lethal Injection*, New Republic, July 24, 2014.

the same reasons.  (Case No. 2:11 CV 1016; ECF Nos. 466, 494.)  This January, Ohio changed

its protocol again, and announced it no longer will execute inmates with midazolam and

hydromorphone, but will use thiopental sodium and pentobarbital instead.[3]  According to the

ODRC, Ohio's next execution is now set for January 21, 2016.

Given these developments, Jones requests that the Court allow discovery linked to *In re*

*OEPL* to continue and extend the discovery deadline until 60 days after Ohio's next execution so

that he can conduct discovery relating to the execution.  (ECF No. 191 at 8-10.)

Respondent states that she has no objection to extending by 60 days the amount of time

Jones may have to review the documents already produced.  (ECF No. 190 at 1 n.1.)  But she

argues that Jones' motion should be denied, because he fails to satisfy the standard for discovery

under Habeas Rule 6, and because his claim is no longer viable in habeas corpus, as it "has

morphed from focusing on the implementation and risk of *future* maladministration of lethal

injection (the issue in *Baze*) to Ohio's *past* deviations from, and changes to, its lethal injection

protocol and its alleged botched executions."  (ECF No. 192 at 2-3 (emphasis original).)

### B.  Jones' Prior Requests for Substitution of Counsel and to Withdraw his Lethal Injection Claim

Jones has requested new counsel numerous times during his habeas proceedings.  His

complaints most often have stemmed from what he perceives as his counsel's refusal to

investigate and assert his claim that Teresa Taylor and Anthony Barksdale, two eyewitnesses to

the murder for which Jones was convicted, falsely identified him at trial as the murderer.  He

claims that in a pretrial statement to police, which his trial counsel possessed at trial, Taylor

---

[3]      *See* Mark Berman, *Ohio drops controversial lethal injection drug, postpones upcoming execution*, Washington Post, January 9, 2015.

stated that the shooter was wearing a tan and green, or tan, coat (which he claims identifies Barksdale as the actual murderer since he was wearing a tan and black coat the night of the murder) but that a man in a green coat (Jones admits he was wearing a green Green Bay Packers jacket that night) left before the shooting and did not return.  Jones argues that Barksdale lied on stand because he had made a deal with the prosecutor to give false testimony in exchange for a lenient sentence.  During his habeas proceedings, Jones has variously characterized his claims based on this theory as actual innocence, ineffective assistance of trial counsel, and suppression of exculpatory evidence.  (*See, e.g.*, ECF Nos. 62, 65.)

Respondent counters these claims by arguing that Jones' trial counsel extensively cross-examined Taylor at trial concerning her statement to the police that the shooter had been wearing a green and tan Green Bay Packers jacket and hat, and that Taylor was consistent in her description of the shooter as clad in a green coat.  She also points out that the other evidence against Jones was overwhelming:  the police found the murder weapon in his possession and live ammunition of the type and caliber used for the murder in his Green Bay Packers jacket; and Jones' hands tested positive for the presence of gunshot residue.  (ECF No. 61 at 10-12.)

The first time Jones asked for new counsel was on July 14, 2004, only thirteen months after he initiated his habeas case.  He filed an untitled pleading (in the name of "GOD aka Odraye Jones") with the Court asking it to consider "in the interests of justice" pleadings he had already filed pro se.  He explained that he filed a "supplemental traverse" and motions to expand the record, amend the petition, and obtain an evidentiary hearing because his counsel was unable or unwilling to advance his so-called actual innocence claim described above, the subject of the pleadings (he had filed a similar pro se motion to expand the record earlier, and it was denied).

7

(ECF Nos. 60, 62, 65, 68, 69.)

This Court denied Jones' pro se motions on July 28, 2004, "without prejudice and without consideration" on the ground that he was not entitled to "hybrid representation."  The Court ordered Jones to notify it of his chosen method of representation, pro se or by counsel.  It stated that "[i]f the Petitioner chooses to act *pro se*, the Court will hold a hearing on this issue" and consider his motions, but if he obtains counsel, "he may not file any further *pro se* documents with this court."  (ECF No. 72.)  Jones complied with the order on October 7, 2004, by filing a pro se motion seeking to remove his retained attorney, Paul Mancino Jr., due to a "deficiency in the performance of his duties," and obtain appointed counsel to represent him. (ECF No. 76.)  The Court granted Jones' motion on October 19, 2004, removing Attorney Mancino from this case and appointing Attorneys Spiros Cocoves and Jeffrey Helmick to represent Jones.  (ECF No. 77.)

On June 1, 2007, Jones filed a pro se motion with this Court requesting the removal of Attorneys Cocoves and Helmick because, among other things, they disagreed with his assessment of his claim regarding Taylor and Barksdale's testimony.  (ECF No. 119.)  The Court denied the motion that day as moot because it had ruled on Jones' Petition the previous month, on May 21, 2007.  (ECF No. 120.)  The Sixth Circuit appointed the Federal Public Defender for the Northern District of Ohio as co-counsel upon Jones' motion on November 4, 2008.  (ECF No. 125.)

On April 9, 2012, after the Sixth Circuit had remanded Jones' lethal injection claim to this Court for factual development, Jones filed a pro se motion to remove his counsel and waive his lethal injection claim.  (ECF No. 157.)  And on May 14, 2012, he filed pro se a "Motion to

8

Appoint Counsel to Meaningfully Research and Present Rule 60(d) Independent Action In Re Divided Loyalties of Habeas Counsel and Fraud upon the Court by the State Affecting Integrity of Habeas Proceedings."  (ECF No. 165.)  In these motions, Jones asked the Court to remove Attorney Spiros Cocoves and Attorneys Alan Rossman and Vicki Werneke of the Federal Public Defender's Office, and appoint new counsel.  Attorney Helmick already had withdrawn as counsel.  (ECF Nos. 148, 149.)  This time, Jones' main criticism of his counsel was that he did not consent to the appeal of his lethal injection claim and repeatedly had asked them to withdraw it and focus on his "actual innocence" claims, which they refused to do.  (ECF No. 157 at 1.) Jones also asked the Court to permit him to dismiss the appeal of his lethal injection claim, which he described as "frivolous" and "garbage."  (*Id*. at 2.)

The Court conducted a telephone conference with counsel for both parties on May 16, 2012, after which it issued an order requiring Jones to seek leave from the Sixth Circuit to rule on the motions in light of the limited scope of the Sixth Circuit's remand to this Court.  (ECF No. 167.)  Jones' counsel did so, and the Sixth Circuit granted this Court the jurisdiction to rule on the motions on September 6, 2012.  (ECF No. 169.)  At a hearing on the matter, held on September 25, 2012, Jones' counsel informed the Court that they were withdrawing their objection to Jones' request for new counsel, since their relationship with him had broken down to the point where there was a total lack of communication between them.  Ms. Werneke offered to facilitate the appointment of replacement counsel.

On October 12, 2012, this Court granted Jones' motion for new counsel.  The Court found that there had been a complete breakdown in the attorney-client relationship, making it virtually impossible for his counsel to adequately prepare Jones' appeal.  It held his request to

withdraw the lethal injection claim in abeyance until Jones had conferred with his new counsel. (ECF No. 173.)  The Court appointed the Federal Public Defender for the Western District of Pennsylvania, including Attorneys Anna Ahronheim and Lynn Ellenberger, as Jones' new counsel.  (ECF Nos. 174, 175, 182.)  The Federal Public Defender for the Southern District of Ohio could not accept the appointment due to a conflict.  (ECF No. 174.)  On August 26, 2013, Jones, through counsel, notified the court that he intended to withdraw his request to waive his lethal injection claim.  (ECF Nos. 179, 180, 181.)

Jones filed a fifth motion to remove counsel on May 1, 2014.  He complained of Attorneys Ahronheim and Ellenberger's lack of interest, dishonesty, and poor judgment.  (ECF No. 184.)  In a sealed response, Attorney Ahronheim denied Jones' charges and assured the Court of her continued commitment to providing Jones diligent and zealous representation. (ECF No. 187.)  This Court denied Jones' request.  (ECF No. 188.)

Now, Jones has filed a pro se motion entitled "Motion Waiving Lethal Injection, Motion to Proceed Pro Se."  (ECF No. 193.)  He states that he is "rejecting the assistance of appointed counsel and representing [himself]," and that he is "qualified to make this choice."  (ECF No. 193, 1.)  He further explains that he wants to assert a claim that his indictment for the murder was defective and therefore void, in detail and with legal citations.  (*Id*.)

Respondent has filed a response to Jones' motion to waive his lethal injection claim, stating her position that the motion should be granted.  (ECF No. 194.)  Jones' counsel has notified the Court that they will not respond to Jones' motion because the Court already has addressed these issues.  (*See* ECF No. 195 at 5 n.4.)

Jones has tried to remove his counsel and assert his actual innocence claims pro se in

other courts as well.  He filed a "Motion to Remand for Fraud upon the 'Trial,' Appellate, and District Courts" with the Sixth Circuit on April 28, 2014.  (Case No. 07-3766, ECF No. 174.) Respondent opposed the motion, and the court denied it.  (Case No. 07-3766, ECF Nos. 175, 176-1.)  Jones then filed an "Objection to Denial of Motion for Remand and Motion to Reinstate Motion" on June 5, 2014.  In it, he stated,

> If the denial has anything to do with so-called "hybrid" representation, that has no merit.  I am pro se.  "Counsel" has been informed of this fact.  Moreover, the district court's denial of My [*sic*] motion to remove counsel is based on several errors.  I never asked for substitution of counsel.  I am going to proceed pro se.  If its [*sic*] necessary, I'll waive the lethal injection.

(Case No. 07-3766, ECF No. 177.)  The court also denied that motion.  (Case No. 07-3766, ECF No. 178-1.)

Jones also filed (under his new name) a pro se petition for writ of habeas corpus under 28 U.S.C. § 2241 in the Southern District of Ohio on April 11, 2014, asserting the defective indictment claim.  (Case  No. 1:14 CV 00883, ECF No. 1.)  The case was transferred to this Court on April 24, 2014, and assigned to Judge Polster.  (Case  No. 1:14 CV 00883, ECF No. 3.) Judge Polster dismissed the petition because Jones has a pending habeas case and he is represented by counsel.  He also explained that the motion should have been filed under 28 U.S.C. § 2254 because Jones is subject to the death penalty.  (Case  No. 1:14 CV 00883, ECF No. 9.)  Jones filed an objection to the dismissal, which remains pending.  (Case  No. 1:14 CV 00883, ECF No. 10.)

On September 24, 2014, this Court ordered Jones to seek leave again from the Sixth Circuit to permit this Court to rule on his motion to proceed pro se and withdraw his lethal injection claim.  (ECF No. 196.)  At Jones' counsel's request, the Court clarified the order on

October 28, 2014, to specify that either Jones or his counsel could file the motion for leave with the Sixth Circuit.  (ECF No. 197.)

On October 31, 2014, Jones filed a pro se "Motion to Dismiss for Lack of Jurisdiction[, or,] in the Alternative, a Motion for Leave" with the Sixth Circuit.  (Case No. 07-3766, ECF No. 180.)  In it, Jones asked the court to dismiss his entire habeas case based on his defective indictment claim.  (*Id*. at 1-3.)  In the alternative, he stated:

> As a last resort, I request leave for the district court to rule on my motion to remove counsel and waive lethal injection pursuant to "court order" entered on 9.24.2014.  As shown here, lethal injection is rendered a moot point aand [*sic*] a waste of My [*sic*] time and the Court's resources.

(*Id*. at 3.)  Respondent then filed a motion with the Sixth Circuit requesting that the court grant Jones' motion for leave and deny the motion in all other respects as meritless.  (Case No. 07-3766, ECF No. 182.)

Jones, through counsel, then filed a motion with the Sixth Circuit to expand the limited remand.  Counsel explained that, based on their review of the record and further investigation, they have concluded that "this case warrants further development of claims of ineffective assistance of trial counsel," necessitating "supplemental and/or amended pleadings" under the authority of the recent Supreme Court cases *Martinez v. Ryan*, 566 U.S. 1, 132 S. Ct. 1309 (2012), and *Trevino v. Thalor*, 133 S. Ct. 1911 (2013).  (Case No. 07-3766, ECF Nos. 183, at 7-8.)  In *Martinez v. Ryan*, the Supreme Court held that the "[i]nadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial."  *Martinez*, 132 S. Ct. at 1315.  The Court emphasized that its holding in *Martinez* represents a "narrow exception" to the procedural-default bar.  *Id*. at 1319.  In *Trevino v. Thalor*, the Supreme Court expanded the scope of *Martinez* to apply when a

12

state, by reason of the "design and operations" of its procedural framework, permits but "makes it highly unlikely in a typical case that a defendant will have a meaningful opportunity to raise a claim of ineffective assistance of trial counsel on direct appeal . . . ."  133 S. Ct. 1911, 1921 (2013).  The Sixth Circuit applied *Trevino* to Tennessee ineffective-assistance claims in *Sutton v. Carpenter*, 743 F.3d 787, 790 (6th Cir. 2014), but has yet to address whether *Trevino* applies to Ohio ineffective-assistance claims.  Respondent opposed that motion.  (Case No. 07-3766, ECF Nos. 183, 184.)

Finally, on November 21, 2014, Jones filed pro se in the Sixth Circuit a "Prisoner's Response to State's Response, and Capital Habeas Unit's Motion to Expand Remand."  In this pleading, he restated his desire to remove his attorneys and proceed pro se with the intent to withdraw his lethal injection claims and assert new "actual innocence" claims based on faulty eyewitness testimony at his trial and the defective indictment.  (Case No. 07-3766, ECF No. 187.)  He further explained that he had spoken to his attorneys only twice in the past year, and one of those times was to tell them "to drop the lethal injection litigation," and that he was "raising money" to hire his own counsel, and may have enough by January 2015.  (*Id*. at 1-2.)  He also claimed he had his "own *Martinez* motion ready to go," and he intended to pursue his claims regarding fabricated testimony and the void indictment, which he stated his counsel had refused to raise on his behalf because "[t]hey don't know the law . . . ."  (*Id*.)

On January 28, 2015, the Sixth Circuit issued an order granting this Court the authority to consider Jones' pro se motions to remove counsel and waive his lethal injection litigation, and granting Jones' motion through counsel for "the filing and full consideration of supplemental or amended pleadings related to the ineffective assistance of trial counsel, and for the district court

13

to consider Jones's contention that there is cause to excuse the procedural default of those claims under" *Martinez v. Ryan, supra,* and *Trevino v. Thaler, supra*.  (Case No. 07-3766, ECF No. 189-1.)

The Court has reviewed all pleadings filed in connection with Jones' numerous motions to remove counsel and withdraw his lethal injection claim.  It has not found any suggestion by Jones' various counsel or Respondent that Jones currently is, or at any time was, incompetent or suffering from a mental disorder.

## II.      Legal Standards and Analysis

### A.      Jones' Right to Proceed Without Counsel

Jones cites *Faretta v. California*, 422 U.S. 806 (1975), to support his request to proceed pro se.  In that case, the Supreme Court held that the Sixth and Fourteenth Amendments guarantee to every defendant in a state criminal trial the "the right to proceed *without* counsel when he voluntarily and intelligently elects to do so."  *Id*. at 807 (emphasis original).  The Court implied this right from, among other things, "a nearly universal conviction, on the part of our people as well as our courts, that forcing a lawyer upon an unwilling defendant is contrary to his basic right to defend himself if he truly wants to do so."  *Id*. at 817.

*Faretta* made clear, however, that the right to self-representation is not absolute.  Most importantly, the defendant must "knowingly and intelligently" elect to conduct his own defense. *Id*. at 835 (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464-65 (1938)).  The Court explained,

> Although a defendant need not himself have the skill and experience of a lawyer
> in order competently and intelligently to choose self-representation, he should be
> made aware of the dangers and disadvantages of self-representation, so that the
> record will establish that "he knows what he is doing and his choice is made with
> eyes open."

14

*Id*. at 835 (quoting *Adams v. United States ex rel. McCann*, 317 U.S. 269, 279 (1943)).  The Court also noted that "[t]he right of self-representation is not a licence to abuse the dignity of the courtroom" or fail "to comply with relevant rules of procedural and substantive law."  *Id.* at 834 n.46.  *See also United States v. Frazier*, 204 F.3d 553, 558 (4th Cir. 2000) (upholding trial court's denial of defendant's request to waive counsel and proceed pro se where defendant was trying "to argue matters which would not be permitted by the court").

Later, in *McKaskle v. Wiggins*, 465 U.S. 168, 183-84 (1985), the Supreme Court held that a defendant's Sixth Amendment right to conduct his own defense at trial was not violated when the judge appointed standby counsel, even over the defendant's objection, to assist the defendant with "the basic procedures of trial," such as courtroom protocol and routine procedural or evidentiary issues, since the trial judge has no obligation to do so.  And in *Indiana v. Edwards*, 554 U.S. 164, 177-78 (2008), the Court held that it was constitutionally permissible for a trial judge to insist upon representation by counsel for those competent enough to stand trial but who still suffer from severe mental illness.

Closer to this case is *Martinez v. Court of Appeals of California*, 528 U.S. 152, 163 (2000), in which the Court held that the *Faretta* right to self-representation does not extend to appellate proceedings, but remains within the discretion of the court.  It noted that "the government's interest in ensuring the integrity and efficiency of the trial at times outweighs the defendant's interest in acting as his own lawyer."  *Id.* at 162.  The Court found that to be true in the appellate context, where the defendant ordinarily initiates the proceedings to overturn a finding of guilt rather than defending him or herself from the state under a presumption of innocence, and trained counsel will benefit the appellant as well as the court.  *Id*. at 162-63.  The

Court observed, "Our experience has taught us that a pro se defense is usually a bad defense, particularly when compared to a defense provided by an experienced criminal defense attorney." *Id*. at 161 (internal quotation marks and citation omitted).

Neither the Supreme Court nor the Sixth Circuit has addressed the issue of a petitioner's right to self-representation in federal capital habeas corpus proceedings. But the Supreme Court has noted that "[t]he complexity of our jurisprudence in [the capital habeas corpus] area . . . makes it unlikely that capital defendants will be able to file successful petitions for collateral relief without the assistance of persons learned in the law." *McFarland v. Scott*, 512 U.S. 849, 855-56 (1994) (internal quotation marks and citations omitted). "Congress' provision of a right to counsel [for federal habeas petitioners] reflects a determination that quality legal representation is necessary in capital habeas corpus proceedings in light of the seriousness of the possible penalty and . . . the unique and complex nature of the litigation." *Id*. at 854.

Indeed, several district courts have cited *Martinez* and *McFarland* to support decisions to deny capital habeas petitioners' requests to proceed pro se, and have ordered court-appointed representation by counsel. *See Bonilla v. Martel*, 2012 WL 1895984, at *1 (N.D. Cal. 2012) ("Self-representation is often unwise, and considering the complexity of capital habeas litigation, would likely be detrimental to Petitioner."); *Bonilla v. Cullen*, 2010 WL 2891588, at *1 (N.D. Cal. 2010) ("Petitioner has offered no compelling reasons as to why he would be better served representing himself in this complex capital habeas matter . . . ."); *Stankewitz v. Ayers*, 2007 WL 4522610, at *1 (E.D. Cal. 2007) ("The right to self-representation does not extend to post-conviction proceedings, but remains within the discretion of the court."); *Legrande v. Lee*, 2005 WL 1869223, at *2 n.2 (M.D.N.C. 2005) (finding that *Martinez* rule applies to post-conviction

16

motions and representation required in capital federal habeas action).  In only one of these cases, *Legrande v. Lee, supra*, did the court conduct a hearing.

Here, Jones' motion to proceed without counsel must be denied.  The stakes are far too high, as they are in all death penalty cases.  *See, e.g., Garner v. Florida*, 430 U.S. 349, 357 (1977) ("[D]eath is a different kind of punishment from any other which may be imposed in this country.").  And the legal and factual issues still to be addressed – including the application of *Martinez v. Ryan*'s procedural default exception to Ohio inmates' ineffective-assistance claims and Jones' method-of-execution claim – are far too complex for a layman with no legal training to litigate effectively without assistance.  *McFarland*, 512 U.S. at 855-56.

Moreover, Jones' counsel have demonstrated that they are skilled and ardent litigators in criminal matters, clearly acting in Jones' best interests.  While there has been a breakdown in communication between Jones and his counsel, the Court believes the situation could improve if Jones would cooperate with counsel and be more receptive to their professional analysis and judgment.  *See United States v. Marrero*, 651 F.3d 453, 466 (6th Cir. 2011) ("a lack of communication resulting from a defendant's refusal to cooperate with his attorney does not constitute good cause for substituting counsel") (citation omitted).

Accordingly, in this context,  "the government's interest in ensuring the integrity and efficiency of the trial . . . outweighs [Jones'] interest in acting as his own lawyer."  *Martinez v. Court of Appeals of California*, 528 U.S. at 162.

### B.     Issues Related to Jones' Lethal Injection Claim

#### 1.     Jones' Right to Withdraw his Lethal Injection Claim

In *Rees v. Peyton*, 384 U.S. 312, 314 (1966), the Supreme Court held that where a capital

17

habeas petitioner has asked his counsel to withdraw his petition and waive further legal

proceedings, and his counsel raises with the court the issue of the petitioner's mental

competency to make that decision, the district court should determine:

> whether he has [the] capacity to appreciate his position and make a rational
> choice with respect to continuing or abandoning further litigation or on the other
> hand whether he is suffering from a mental disease, disorder, or defect which may
> substantially affect his capacity in the premises.

*Id*. at 314. To that end, the Court continued, district courts may order psychiatric or other

appropriate medical examinations and "hold such hearings as it deems suitable." *Id*. The Court

pointed to 18 U.S.C. §§ 4244-4245 (now codified as 18 U.S.C. §§ 4241-4247), which governs

federal defendants' competence to stand trial, for guidance as to the proper procedures for

conducting a competency hearing.[4] *Id. See also Tibbals v. Carter*, 133 S. Ct. 696, 706 n.11

(2013) (explaining that the *Rees* Court's citation to §§ 4244-4245 "did nothing more than point

the District Court to those sections of the Criminal Code that set forth the proper procedures for

conducting a competency hearing"); *Awkal v. Mitchell*, 174 Fed. App'x 248, 250 (6th Cir. 2006)

(explaining that § 4241 provides "guidance" regarding whether a petitioner is entitled to a full

evidentiary hearing regarding competency, but that the standard for competency established in

*Rees* is the "relevant precedent for the question of competency to withdraw an appeal").

 Thus, "'*Rees* clearly contemplates that competent waivers are possible . . . .'" *Franklin v.*

---

[4]  Section 4241 states that a district court may hold a competency hearing "if there
is reasonable cause to believe that the defendant may presently be suffering from a mental
disease or defect rendering him mentally incompetent to the extent that he is unable to
understand the nature and consequences of the proceedings against him or assist properly in his
defense." 18 U.S.C. § 4241(a). The statute also provides that, prior to the date of the hearing,
the court may order that a psychiatric or psychological examination of the defendant be
conducted. 18 U.S.C. § 4241(b).

*Francis*, 144 F.3d 429, 433 (6th Cir. 1998) (quoting *Smith v. Armontrout*, 812 F.2d 1050, 1057 (8th Cir. 1987)).  But if a concern about the petitioner's competence to make that decision is raised – whether by petitioner's counsel, a third party acting as "next friend," or the court itself – then the court must first resolve that issue before permitting the waiver.  *See, e.g.*, *Harper v. Parker,* 177 F.3d 567, 571 (6th Cir. 1999) (petitioner's counsel filed a motion for stay of execution raising issue of petitioner's competence to waive habeas corpus proceedings); *Kirkpatrick v. Bell*, 64 Fed. App'x 495, 495-96 (6th Cir. 2003) (petitioner's sister filed petition in federal district court to intervene as next friend and district court held preliminary hearing to determine reasonable cause); *Awkal*, 174 Fed. App'x at 248 (petitioner's counsel filed pleading in court of appeals responding to petitioner's motion to terminate his appeal and raising competence issue).  And "once [the petitioner's] competence [is] put in issue, [the petitioner can]not waive his right to have his competence determined." *Harper*, 177 F.3d at 571(citing *Pate v. Robinson*, 383 U.S. 375 (1966)).

As noted above, the issue of Jones' competence to make a rational choice to waive his method-of-execution claim has not been raised to this Court.  The Court, however, does have some concern about Jones' ability to understand and appreciate the serious issues related to this claim and make a rational decision about waiving it, as evidenced by his inability to work with multiple counsel, signing pleadings under the name "God," and the general tone and content of his pro se pleadings.  Nevertheless, for reasons described below, the Court will not rule on Jones' motion to withdraw his lethal injection claim at this time.

### 2.    Jones' Discovery Requests and Current Method-of-Execution Litigation

Jones (again, through counsel) points to two 2013 decisions in habeas cases that support his request for expanded discovery on his lethal injection claim:  *Sheppard v. Robinson* and *Phillips v. Robinson.*  (ECF No. 191 at 12-13.)  In *Sheppard*, the Sixth Circuit granted the petitioner's motion to remand his lethal injection habeas claims to the district court.  (Case No. 13-900; ECF No. 35-1.)  The petitioner had argued that Ohio's newly revised protocol "is materially different from the protocol under which the district court previously adjudicated his constitutional claims, and that it gives rise to additional constitutional claims."  He stated that his "method-of-execution habeas claims must be remanded to the district court to consider [his] claims in accordance with the changed factual landscape."  (Case No. 13-900; ECF No. 21 at 3). In *Phillips v. Robinson,* Judge Frost of the Southern District of Ohio denied a COA on the petitioner's habeas lethal injection claims because "Petitioner seeks to appeal the denial of method-of-execution claims targeting an execution protocol that is no longer in effect," implying that a new habeas corpus petition is necessary to raise current and cognizable method-of-execution habeas claims following the State's adoption of a new protocol.  (Case No. 2:13 CV 791; ECF No. 441.)

The law in this area is far from settled, however.  The Sixth Circuit more  recently has indicated that the § 1983 case *In re OEPL* may be the most effective (but not only) avenue for method-of-execution claims relating to lethal injection.  On April 2, 2014, it summarily denied the petitioner's habeas Eighth Amendment lethal injection claim in *Adams*.  (Case No. 1:05 CV 1886; ECF No. 134.)  Then, on July 28, 2014, the Sixth Circuit affirmed the denial by another judge from this Court of a similar habeas lethal injection claim and the petitioner's request on

appeal that it remand the claim for further development in the district court. The court

concluded,

> Although we understand Scott's point – that the relief he seeks is available only through a federal habeas claim – we decline to grant Scott's request for a remand. As the law currently stands, there is no merit to Scott's assertion that his sentence is void because lethal injection is unconstitutional. Simply put, lethal injection does not violate the Constitution per se, and Scott acknowledges as much in his brief. *See Baze v. Rees*, 553 U.S. [35 (2008)]; *Cooey v. Strickland*, 589 F.3d 210 (6th Cir. 2009). Therefore, in order to obtain relief from his sentence, Scott would first have to gather facts showing that Ohio is unable to administer lethal injection in a constitutionally permissible manner. And this is precisely the type of discovery that Scott can pursue in his § 1983 litigation.
>
> We are assured that Scott's death sentence will not be carried out if, and so long as, a federal court determines that Ohio is incapable of doing so in accordance with the law.

*Scott v. Houk*, 2014 WL 3702438, at *13 (6th Cir. July 28, 2014).

Most significantly perhaps, on January 28, 2015, the Supreme Court accepted for review

the case *Glossip v. Gross* (Case No. 14-7955), in which three death row inmates from Oklahoma

are challenging lethal injection as a method of execution and whether new and untested drug

protocols are constitutional under the Eighth Amendment.[5] The case stems from a botched

---

[5] The following questions were presented for the Court's review:

Question 1: Is it constitutionally permissible for a state to carry out an execution using a three-drug protocol where (a) there is a well-established scientific consensus that the first drug has no pain relieving properties and cannot reliably produce deep, comalike unconsciousness, and (b) it is undisputed that there is a substantial, constitutionally unacceptable risk of pain and suffering from the administration of the second and third drugs when a prisoner is conscious.

Question 2: Does the *Baze*-plurality stay standard apply when states are not using a protocol substantially similar to the one that this Court considered in *Baze*?

Question 3: Must a prisoner establish the availability of an alternative drug formula even if the state's lethal-injection protocol, as properly administered, will violate the Eighth Amendment?

execution in April 2014 using midazolam, the same drug Ohio used in Dennis McGuire's execution and Arizona used in another troubling execution in July 2014 that lasted nearly two hours.  *See Warner v. Gross*, 776 F.3d 721, 725-26 (10th Cir. 2015).  This will be the first time the Court has addressed a method-of-execution claim since *Baze*, and its decision may have broad ramifications.

Respondent opposes Jones' motion to expand discovery first on the ground that the requests do not satisfy Habeas Rule 6 or other federal civil rules.  (ECF No. 192 at 2-3.)  Discovery in habeas cases, however, is governed only by Habeas Rule 6(a), which provides:

> A party shall be entitled to invoke the processes of discovery available under the Federal Rules of Civil Procedure if, and to the extent that, the judge in the exercise of his discretion and for good cause shown grants leave to do so, but not otherwise.

Habeas R. 6(a).  *See also Bracy v. Gramley*, 520 U.S. 899, 904 (1997) (a federal habeas petitioner, "unlike the usual civil litigant, is not entitled to discovery as a matter of ordinary course").  "Good cause" for discovery under Rule 6(a) exists "only where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief . . . ."  *Id.* at 908–09 (quoting *Harris v. Nelson*, 394 U.S. 286, 300 (1969)).

Respondent contends that the discovery Jones requests exceeds the scope of the Sixth Circuit's remand, which she states concerned the standard set forth in *Baze* and "the important question of whether Ohio's safeguards are materially different than Kentucky's."  She explains,

With this new discovery request, however, Jones' claim has morphed from

_____

*Warner v. Gross*, 2015 WL 309509, at *i (2015) (appellate petition for writ of certiorari).

22

> focusing on the implementation and risk of *future* maladministration of lethal
> injection (the issue in *Baze*) to Ohio's *past* deviations from, and changes to, its
> lethal injection protocol and its alleged botched executions.  This new claim is not
> the type of method-of[-]execution challenge addressed in *Baze*, and the discovery
> requested certainly exceeds the scope of the Sixth Circuit's remand.

(*Id*. at 3.)  Respondent further argues that Jones' lethal injection claim has little chance of

prevailing.  She notes the Supreme Court's observation in *Baze* that it has never held that an

inmate met the "heavy burden" of demonstrating that a state's execution violates the Eighth

Amendment, and that courts around the country have approved of the drugs in Ohio's new

protocol.  (*Id*. at 5 (quoting *Baze,* 553 U.S. at 48), 4 (listing citations).)  At the same time, she

continues, Jones' request imposes a significant burden and expense, and undermines the State's

interest in finality and wise judicial administration.  (*Id*. at 5-6.)  Finally, Respondent argues that

the request violates public policy because it is too open-ended; it would allow a new round of

discovery with each new execution protocol and execution.  (*Id*. at 6.)

Jones responds to this argument by noting that:  Respondent has agreed to similar

discovery extensions in other habeas cases asserting lethal injection claims; his requests are not

asserted under Habeas Rule 6, but are tied to *In re OEPL* by this Court's order; he has yet even

to present his claim to the Sixth Circuit, and this Court has no authority to rule on the

cognizability of that claim; and the discovery will not burden Respondent because she will have

to produce it in *In re OEPL* in any event.  (ECF No. 195 at 2-4.)

On balance, Jones' request for additional discovery is reasonable given Ohio's changing

protocols, the serious problems with recent executions, and the Supreme Court's review of

*Glossip*.  But Jones' request is overly broad in both time and scope.  This Court tied discovery in

this case to the *In re OEPL* discovery in its scheduling order at the parties' request and only

because the cases are factually related and the *In re OEPL* discovery already was clearly defined and easily could be reproduced.  Jones' Eighth Amendment habeas claim, however, is legally distinct from the § 1983 civil rights claims asserted in *In re OEPL,* and the two cases need not, and should not, be linked to one another indefinitely.  Respondent is correct that if Jones seeks additional discovery, he should set forth narrowly tailored requests based on specific allegations in his claim, as required by Habeas Rule 6.

Respondent's second ground for opposing Jones' requests is that Jones' claims are not cognizable in habeas.  He argues that the Sixth Circuit, in *Scott v. Houk, supra*, "has now clearly stated that *per se* challenges to lethal injection belong in habeas corpus but challenges to the execution procedures belong in § 1983."  (ECF No. 191 at 6-7 (citing *Scott*, 2014 WL 3702438).)

Because Jones' discovery requests relate to Ohio's execution protocols and procedures, she contends, "he concedes his claims are non-cognizable in habeas."  (*Id*. at 7.)  This argument also is unpersuasive.

First, Respondent oversimplifies and misstates the law.  In *Adams v. Bradshaw*, *supra*, the Sixth Circuit rejected the warden's contention in that case that the Supreme Court has held that "a challenge to the particular means by which a lethal injection is to be carried out is non-cognizable in habeas" as "too broad."  *Adams*, 644 F.3d at 483 (internal quotation marks omitted).  The court explained that the Supreme Court has never held

> that a method-of-execution challenge is not cognizable in habeas or that a federal court "lacks jurisdiction" to adjudicate such a claim in a habeas action.  Whereas it is true that certain claims that can be raised in a federal habeas petition cannot be raised in a § 1983 action, . . . it does not necessarily follow that any claim that can be raised in a § 1983 action cannot be raised in a habeas petition . . . . Moreover, . . . Adams has not conceded the existence of an acceptable alternative

24

> procedure. . . .  Thus, Adams's lethal injection claim, if successful, could render
> his death sentence effectively invalid.  Further, [the Supreme Court's] statement
> that "method-of-execution challenges [] fall at the margins of habeas," . . .
> strongly suggests that claims such as Adams's can be brought in habeas.

*Id*. (quoting *Nelson v. Campbell*, 541 U.S. 637, 646 (2004)).

Thus, after *Adams*, it is clear that certain method-of-execution challenges can be brought in habeas, and those claims can include "challenge[s] to the particular means by which a lethal injection is to be carried out."  *Id*.  Indeed, as the Sixth Circuit stated in *Scott v. Houk,* the case upon which Respondent relies, a habeas petitioner can prevail on a lethal injection claim if he can "gather facts showing that Ohio is unable to administer lethal injection in a constitutionally permissible manner."  *Scott*, 2014 WL 3702438, at *13.  This is precisely what Jones is attempting to do.  *See also Hill v. McDonough*, 547 U.S. 573, 580 (2006) (holding that lethal injection claim was cognizable through § 1983 rather than habeas where, "if successful[, it] would not necessarily prevent the State from executing him by lethal injection"; "[t]he complaint does not challenge the lethal injection sentence as a general matter but seeks instead only to enjoin respondents from executing [the petitioner] in the manner they currently intend"; and the petitioner conceded that "other methods of lethal injection . . . would be constitutional"); *Sheppard v. Warden, Chillicothe Corr. Inst.*, 2013 WL 146364, at **7-8 (S.D. Ohio Jan. 14, 2013) (Frost, J.) (holding that the petitioner's lethal injection claims can proceed in habeas because they "are factually related to, but legally distinct from, the challenges that he is litigating in [the § 1983 action, where] Petitioner necessarily concedes that Ohio can, if it makes certain changes and improvements, execute him" constitutionally*); Phillips v. Robinson*, 2013 WL 3990756, at *13 (N.D. Ohio August 2, 2013) (Lioi, J.) ("[T]o strictly classify claims as falling within § 1983 or habeas based entirely on either general or specific pleading, while discounting

the differences in remedies, is to overlook the true nature of the claim.  For, in order to prove even the broadest method-of-execution claim, a petitioner necessarily must attack specific elements of the protocol; he cannot prove his case upon general, conclusory assertions alone.").

Furthermore, as Jones argues, the issue of whether his lethal injection claim properly sounds in habeas or § 1983 is premature at this point, since he has not yet presented his claim to the Sixth Circuit.  And "the difficult question of how to categorize method-of-execution claims," *Nelson v. Campbell*, 541 U.S. 637, 644 (2004), clearly is not within the limited scope of this Court's jurisdiction on remand in any event.

### 3. Conclusion

Based on the above, the Court finds that the most cautious course would be to hold in abeyance Jones' pro se motion to waive his lethal injection claim and motion through counsel to extend discovery on that claim, as well as Respondent's motion to transfer until the Supreme Court issues its opinion in *Glossip v. Gross.*  A ruling in that case may shed light on the strength and viability of Jones' claim, necessarily affecting Jones' decision to relinquish what could be a valuable right.  The *Glossip* decision also may clarify many unresolved issues raised in current method-of-execution litigation, potentially narrowing or even eliminating many discoverable issues in Jones' case.

## III.  CONCLUSION

Accordingly, the Court denies Jones' pro se motion to proceed without counsel, and reminds Jones of the Court's prior admonition not to file any further pro se pleadings.  The Court will hold Jones' motion to waive his lethal injection claim in abeyance, however,  until the Supreme Court rules in *Glossip v. Gross.*  (ECF No. 193.)  The Court also will hold in abeyance

until *Glossip* is decided Respondent's motion to transfer (ECF No. 190) and Jones' motion, through counsel, to expand discovery on his lethal injection claim (ECF No. 191).

The Court further sets the following schedule for the filing of "supplemental or amended pleadings related to the ineffective assistance of trial counsel . . . [and] Jones's contention that there is cause to excuse the procedural default of those claims under" *Martinez v. Ryan, supra,* and *Trevino v. Thaler*, *supra*, as directed by the Sixth Circuit: Jones must file all applicable pleadings by May 29, 2015; Respondent must respond to the pleadings by June 30, 2015; and Jones may file reply briefs by July 15, 2015.

IT IS SO ORDERED.

                              s/ *David A. Katz*
                             DAVID A. KATZ
                             U. S. DISTRICT JUDGE