UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ODRAYE G. JONES (n/k/a Malik Allah-U-Akbar), | : | Case No.:  1:03 CV 1192 |
| | : | |
| Petitioner, | : | |
| | : | JUDGE SOLOMON OLIVER, JR. |
| vs. | : | |
| | : | |
| MARGARET BRADSHAW, Warden, | : | |
| | : | **MEMORANDUM OF OPINION** |
| Respondent. | : | **AND ORDER** |

Before the court in this capital habeas corpus case is Petitioner Odraye Jones' "Motion to Issue Unconditional Writ of Habeas Corpus and Bar Retrial." (Doc. 278.)[1]  Specifically, Jones asks this court to: (1)  issue an unconditional writ of habeas corpus due to the State of Ohio's failure to comply with the Sixth Circuit Court of Appeal's conditional writ directing this court to issue an absolute writ vacating Jones' death sentence unless the State conducted a new penalty-phase proceeding within 180 days of remand; and (2) bar the State from conducting a new penalty-phase trial, or at a minimum, from seeking the death penalty.  (Doc. 278 at 1.)[2]

---

[1] This case was transferred to the undersigned upon the death of United States District Court Judge David A. Katz.  In addition, Jones has legally changed his name to Malik Allah-U-Akbar.  (*See* Doc. 198.)  The court will continue to refer to him as Jones in this Memorandum of Opinion and Order, however, for the sake of clarity and continuity.

[2] For ease of reference, all citations to page numbers of documents in the court's electronic court filing system ("ECF") are to the ECF-assigned page numbers of the

Respondent has filed a brief in opposition to the motion (Doc. 279), to which Jones has replied (Doc. 280).  For the following reasons, the court grants the motion in part and denies it in part.

### RELEVANT PROCEDURAL HISTORY

Nearly twenty-six years ago, on May 5, 1998, a jury in Ashtabula County, Ohio, convicted Odraye Jones for the aggravated murder of Police Officer William Glover with four capital specifications.  On June 11, 1998, the jury recommended a sentence of death, which the trial court accepted and imposed.  *See State v. Jones*, 91 Ohio St. 3d 335, 335-37 (Ohio 2001) (providing a detailed account of Jones' crimes and trial).  Jones' convictions and sentence were affirmed on direct appeal, and he was unsuccessful in state post-conviction proceedings.  *See id.* (direct appeal); *State v. Jones*, 2002 WL 737074 (Ohio Ct. App. Apr. 26, 2002) (post-conviction relief).

Jones first sought habeas corpus relief before another judge in this court in October 2003, raising thirty-four grounds for relief.  (Doc. 17.)  After a long and complex course of litigation, the court resolved Jones' habeas proceedings in October 2015, denying his petition.  (*See* Doc. 233.)

Jones appealed that judgment, and on August 22, 2022, the Sixth Circuit affirmed Jones' convictions, but held that the ineffective assistance of counsel during the penalty phase of his trial rendered Jones' death sentence unconstitutional.  *Jones v. Bradshaw*, 46 F.4th 459, 487-89 (6th Cir. 2022).  Relying on the recent United States Supreme Court decision in *Buck v. Davis*, 580 U.S. 100 (2017), the court found that Jones' trial counsel were ineffective for allowing the jury to hear "racially prejudicial" expert testimony during the sentencing phase of trial.  *Jones*, 46 F.4th at

---

individual documents, not to the documents' original page numbers or the ECF "PageID" numbers.

487-89.  The circuit court granted a conditional writ of habeas corpus ordering that the case be "remand[ed] to the district court with instructions to issue a writ of habeas corpus vacating Jones's death sentence unless the State of Ohio conducts a new penalty-phase proceeding within 180 days of remand."  *Id*. at 489.

Respondent petitioned for rehearing *en banc*, which the circuit court denied on October 7, 2022.  *Jones v. Bradshaw*, 2022 WL 10219982 (6th Cir. Oct. 7, 2022).  The court's mandate then issued on November 17, 2022 (*see* Doc. 268 (Mandate)), making the 180-day deadline for the State's compliance with the writ May 16, 2023.

The state-court proceedings initially moved at a steady pace.  Twelve days after the mandate issued on November 29, 2022, the State filed a motion requesting the court activate Jones' case and set a date for the resentencing proceeding in the Ashtabula County Court of Common Pleas (Case No. 1997 CR 00221).  The trial court appointed counsel for Jones four days later, and on December 15, 2022, ordered that Jones be transferred from death row at the Chillicothe Correctional Institution to the Ohio State Penitentiary to facilitate his access to counsel and travel to court.

But the case soon presented several difficult legal and procedural issues, causing significant delays and jeopardizing compliance with the writ's deadline.  Those issues, as documented by the trial court's docket and judgment entries and transcripts of court proceedings, include:

*Recusals*.  The first two judges assigned to the case recused themselves with no written explanation:  the first judge, on December 20, 2022; and the next, on January 3, 2023.  That same day, a third judge was assigned, Judge David Schroeder, who still presides over the case.  Once

3

assigned, Judge Schroeder immediately scheduled the first status conference for January 27, 2023, already more than two months into the writ's 180-day period.

*Defense Preparation*.  Within days of being appointed, defense counsel began the process of obtaining from the court funds for mitigation experts and an investigator, stressing the difficulties in gathering and presenting mitigation evidence and witnesses for a twenty-five-year-old case.  The trial court granted each defense request.

*Affidavits of Disqualification*.  On April 10, 2023, and May 5, 2023, the prosecutor filed in the Ohio Supreme Court affidavits seeking to disqualify Judge Schroeder on the grounds that he was biased or prejudiced against her, the State of Ohio, and Jones, and that he could not be impartial and open-minded in the capital case.  The first was dismissed on procedural grounds; the second was denied on the merits on July 11, 2023.  The trial-court proceedings were stayed 92 days while the affidavits were pending.  On October 27, 2023, Jones, acting *pro se*, also filed an affidavit of disqualification regarding the judge, which the Ohio Supreme Court promptly denied three days later.

*Jones' Self-Representation Request and Competency Determinations.*  Three days after the mandate issued, on December 20, 2022, Jones, acting *pro se*, filed a pleading entitled "Invocation of Right to Self Representation/Objection to Appointment of Counsel."  On January 3, 2023, his counsel followed up with a "Notification of Defendant's Assertion of Right of Self-Representation," advising the court that from their first meeting with Jones on December 30, 2022, Jones had insisted that he wished to represent himself.  On January 23, 2023, defense counsel filed a more specific motion asking the court to determine Jones' competency to represent himself and a memorandum regarding Jones' competency to stand trial.  Jones' disruptive

4

behavior at the January 27 status conference, however, prompted defense counsel to make an unopposed oral motion to have Jones' competency to stand trial evaluated.[3]  The court granted the motion on February 1, 2023, and ordered an evaluation of Jones by Dr. Jessica  Hart of the Forensic Psychiatric Center of Northeast Ohio, Inc.  The court was clear that it could not conduct a hearing on Jones' request to proceed *pro se* until competency was determined.

On March 7, 2023, the court received Dr. Hart's reports on Jones' competency to represent himself and to stand trial.  Two days later, Jones' counsel requested an evidentiary hearing.  On March 27, 2023, defense counsel moved to obtain a second opinion regarding Jones' competency, which the court granted on April 4, 2023.  Jones, however, refused to participate in the evaluation by the defense's chosen expert, Dr. Bob Stinson, on April 10, 2023.  On July 25, 2023, after the proceedings had been stayed because of the prosecutor's disqualification affidavits, the court received a letter from Dr. Stinson regarding his meeting with Jones.  In the letter, Dr. Stinson suggested that Jones be committed to Twin Valley Behavioral Health for a twenty-day inpatient evaluation, which the court then ordered on August 1, 2023.  But Jones again refused to cooperate with the examiner, Dr. Kevin Edwards.  The court received a report from Dr. Edwards on August 31, 2023.  All three experts opined that Jones was competent to stand trial.

The court conducted a hearing regarding Jones' competency on September 8, 2023.  That morning, defense counsel requested yet another evaluation given the problems encountered by Drs. Stinson and Edwards with Jones.  The trial court denied the motion due to time constraints.  At the hearing, Dr. Hart testified that she found Jones "appropriate, intelligent, and articulate"

---

[3] The trial court noted in a judgment entry dated March 30, 2023, that the transcript of the status conference was "replete with multiple instances of the Defendant's interruption of the proceeding and use of foul language directed at counsel and the Court."

during her eighty-minute interview with him; that Jones had no history or current symptoms of mental illness; and that he had the ability and capacity to assist in his defense, though he chose not to at times. She concluded that Jones was legally competent to stand trial. Dr. Edwards' testimony concurred with Dr. Hart's. Dr. Stinson did not testify at all. Defense counsel proffered that they could not communicate with Jones or formulate any trial strategy because of Jones' refusal to cooperate with them. According to the trial court's judgment entry, there was no testimony from any witness refuting the methodology or the conclusions of either Dr. Hart or Dr. Edwards.

The court then held a hearing on Jones' request to represent himself on September 29, 2023. On October 5, 2023, it decided that Jones was competent to stand trial and granted his request to represent himself – with appointed standby counsel and several other conditions regarding Jones' courtroom behavior and performance. The following day, Jones signed a written "Waiver of Counsel" in open court.

Once Jones began to represent himself, issues arose concerning Jones' ability to perform his legal work in prison and the role of standby counsel. The court worked with prison officials to establish procedures for Jones to receive mail and file motions in a timely manner, and his access to legal documents, proper equipment, and other necessary resources. The court also clarified the role of standby counsel.

*The Parties' Positions Regarding Procedure to Extend Mandate Period.* From the first status conference on January 27, 2022, the trial court and both parties agreed that an extension of time for compliance with the conditional writ would be necessary due to the many challenging issues that had arisen, but they did not always agree on the proper or best way to obtain additional

6

time.  The county prosecutor informed the court at the initial conference that her office would file a motion for additional time in the circuit court if the Ohio Attorney General's Office did not. However, on February 7, 2023, the prosecution instead filed a motion in the state trial court "to take judicial notice" and "to vacate the sentencing entry" pursuant to Ohio Civil Rules.

At a second status conference on February 14, 2023, the State, through the chief assistant prosecutor, again expressed an intent to move for additional time to satisfy the conditional writ in district court, assuring the court "that the State was prepared to take the next appropriate steps" with the district court.  On February 17, 2023, the trial court denied the State's motion and set a date for the resentencing proceedings of April 3, 2023, stating that it would not entertain any continuance of that date "unless [a motion was] accompanied by an order from the appropriate federal court granting this court an extension of the 180 day conditional writ."

At a third status conference on February 24, 2023, the parties discussed the "insurmountable issues" in conducting a new penalty-phase trial.  Defense counsel indicated that they would file a motion to continue the proceedings with the trial court, which the chief assistant prosecutor stated would be attached to the Attorney General's Office's motion for additional time to comply with the writ in federal court.  Defense counsel filed the motion with the trial court on March 3, 2023.

At the next status conference, however, on March 13, 2023, the prosecutor told the court for the first time that filing a motion for extension of time in federal court was "indeed up to the defense," and the State would not be filing such a motion.  Defense counsel stated that he first learned of the prosecutor's change of position on this matter the week before and noted that Jones' federal habeas counsel believed a motion for additional time should be filed in the circuit court, as

"it was the Circuit that issued the writ."

The next day, however, Jones' counsel filed a motion in this court to extend the circuit court's mandated 180-day deadline for completion of the penalty-phase proceedings by 270 days, or until February 10, 2024, to give them adequate time to prepare.  (Doc. 269 at 2, 4.)  Respondent did not oppose the motion.  (Doc. 270.)  On March 24, 2023, this court denied Jones' motion on the ground that it did not have the authority to modify the Sixth Circuit's mandated deadline for compliance with the writ.  (Doc. 272.)  Three days later, however, the trial court, at the fifth status conference, granted Jones' motion to continue the penalty-phase trial until "a later time."

On April 7, 2023, just about a month before the conditional writ's deadline was to expire, Respondent filed a motion with the Sixth Circuit asking it to determine that the State had complied with the terms of the conditional writ or that the trial court may issue necessary continuances.  (Case No. 07-3766, Doc. 333.)  Jones opposed the motion.  (Case No. 07-3766, Doc. 334.)  The circuit court denied the motion on May 10, 2023.  (Case No. 07-3766, Doc. 335-2.)  It noted that, as the state trial court had not vacated Jones' death sentence, the State had "not yet satisfied the [writ's] imposed obligation or demonstrated substantial compliance."  (*Id*. at 4.)  And because the State had until May 16, 2023, to comply, it concluded, the district court lacked the authority to issue the writ, rendering the motion premature.  (*Id*. at 4-5.)  The circuit court further stated a "preference" for the State to "request an extension of time," but stressed that was not the relief Respondent had sought.  (*Id*. at 5.)

The next day, on May 11, 2023, Respondent  moved the circuit court for a 190-day extension of time, or until November 22, 2023, within which to comply with the conditional writ.  (Case No. 07-3766, Doc. 349-1.)  She argued that the proceedings related to Jones' competency to

8

stand trial and to represent himself had made it impossible to meet the writ's deadline of May 16, 2023.  (*Id*.)   The court granted the motion.  (Case No. 07-3766, Doc. 339-1.)

On July 13, 2023, the trial court set a new date for the penalty-phase trial of October 23, 2023.  But on October 6, 2023, the court extended that date to May 20, 2024, as "[a]ll parties agreed [at a status conference that day], that in light of the Court's decision . . . that [Jones was] now representing himself, the current date create[d] multiple issues and [was] unrealistic . . . ."

On October 24, 2023, Respondent filed a second motion with the Sixth Circuit for an additional 248 days, or until July 26, 2024, to satisfy the writ's conditions, because the trial court had *sua sponte* moved the sentencing proceedings to May 20, 2024, after Jones was granted permission to represent himself.  (Doc. 279 at 5.)  Jones opposed the motion.  (*Id.*)  The circuit court denied the State's motion in an unexplained order on November 14, 2023.  (Doc. 277.)

The conditional writ's deadline expired on November 22, 2023.  Nevertheless, the state trial court has moved forward with the jury selection process, and Jones has filed numerous motions, including motions for discovery.  The court also has filed orders regarding the role of standby counsel, courtroom decorum, and trial preparation.  On January 23, 2024, four days after a status conference had taken place, the court ordered Jones to "file a typed brief by February 9, 2024, explaining to this court the limited remand from the Sixth Circuit Court of Appeals and explaining why this court should not reinstate standby counsel as lead counsel."  Jones filed a brief referencing that order on February 5, 2024.

Represented by habeas counsel, Jones has now filed a motion asking this court to:  (1) issue an unconditional writ of habeas corpus, because the State has failed to conduct a resentencing proceeding within the time specified in the Sixth Circuit's conditional writ and

subsequent order granting Respondent's request for an extension of time; and (2) prohibit the

State from conducting a resentencing proceeding or at a minimum, from seeking the death

penalty.  (Doc. 278 at 1.)  Respondent opposes the motion.  (Doc. 279.)  Notably, however, she

states that she "does not oppose the vacation of Jones' death sentence."  (*Id*. at 6.)  But she argues

that the court should not bar the State from conducting a new penalty-phase trial.  (*Id*. at 6-8.)

This court conducted a hearing on the record on Jones' motion on February 15, 2024.

(Doc. 281.)

**ANALYSIS**

**A.     Unconditional Release**

Conditional grants of the writ of habeas corpus provide the state with a window of time

within which it may cure constitutional error.  *Satterlee v. Wolfenbarger*, 453 F.3d 362, 369 (6th

Cir. 2006).   "[T]he sole distinction between a conditional and an absolute grant of the writ of

habeas corpus is that the former lies latent unless and until the state fails to perform the

established condition, at which time the writ springs to life."  *Gentry v. Deuth*, 456 F.3d 687, 692

(6th Cir. 2006).  Accordingly, "[w]hen the state fails to cure the error, i.e., when it fails to comply

with the order's conditions, '[a] conditional grant of a writ of habeas corpus *requires* the

petitioner's release from custody.'"  *Satterlee*, 453 F.3d at 369 (quoting *Fisher v. Rose*, 757 F.2d

789, 791 (6th Cir.1985) (emphasis in original)); *see also Wilkinson v. Dotson*, 544 U.S. 74, 87

(2005) (Scalia, J., concurring) ("Conditional writs enable habeas courts to give States time to

replace an invalid judgment with a valid one, and the consequence when they fail to do so is

always release."); *Henderson v. Frank*, 155 F.3d 159, 168 (3d Cir. 1998); *Phifer v. Warden*, 53

10

F.3d 859, 864–65 (7th Cir. 1995)); 2 Randy Hertz & James S. Liebman, Federal Habeas Corpus Practice & Procedure § 33.3, at 1684 (5th ed. 2005) ("If the state fails to act within the time set for retrial (or for some other proceeding) to occur, the petitioner must be released from custody immediately.").

Conditional writs are final orders, which "ordinarily and ideally operate automatically, that is, without the need for the district court to act further." *Gentry*, 456 F.3d at 692 (citation and internal quotation marks omitted).  But federal district courts generally retain jurisdiction to determine whether a party has complied with the terms of a conditional writ.  *Id.*

Here, the Sixth Circuit granted Jones a conditional writ on August 22, 2022, ordering that his case be remanded "to the district court with instructions to issue a writ of habeas corpus vacating Jones's death sentence unless the State of Ohio conducts a new penalty-phase proceeding within 180 days of remand." *Jones*, 46 F.4th at 489.  Respondent petitioned for rehearing *en banc,* which was denied on October 7, 2022.  *Jones*, 2022 WL 10219982.  The circuit court's mandate then issued on November 17, 2022.  (*See* Doc. 268 (Mandate).)  When the mandate issued, the court's writ became effective and the judgment became final.  *Mason v. Mitchell*, 729 F.3d 545, 551 (6th Cir. 2013) (citing Fed. R. App. P. 41(c)).  The 180-day clock for the conditional writ, therefore, began to run on November 17, 2022, and was set to expire on May 16, 2023.  The Sixth Circuit subsequently, upon Respondent's request, extended that time period 190 days, or until November 22, 2023.  The State, however, did not conduct the resentencing proceeding or vacate Jones' death sentence before that date.

Accordingly, because the State failed to comply with the conditions of the Sixth Circuit's writ, the circuit court's mandate requires this court to order that Jones' unconstitutional death

11

sentence be vacated and that Jones be immediately released from custody.  Indeed, Respondent concedes that "Jones' adjudged sentence of death should be vacated."  (Doc. 279 at 6.)

### B.        Resentencing Proceeding

Jones further asks this court to bar the State from conducting a new penalty-phase trial, or at least prohibit it from seeking the death penalty.  (*See* Doc. 278 at 49.)

The Sixth Circuit has explained that "[i]n a typical case in which a prisoner is released because a state fails to retry the prisoner by the deadline set in a conditional writ, the state is not precluded from rearresting petitioner and retrying him under the same indictment." *Satterlee*, 453 F.3d at 370 (internal quotation marks and citations omitted); 2 Randy Hertz & James S. Liebman, Federal Habeas Corpus Practice & Procedure § 33.3, at 1685–86 (5th ed. 2012) ( "federal courts usually permit rearrest and retrial after the time period specified in the conditional release order has elapsed and the prisoner has been released").  This applies to conditional writs ordering a resentencing as well as those requiring a reprosecution.  *See, e.g,, Lovins v. Parker*, 604 Fed. Appx. 489, 491 (6th Cir. 2015) (affirming district court's decision to permit the state to rearrest and resentence the petitioner after the state failed to comply with a conditional writ's deadline); *Means v. Phillips*, 136 F. Supp. 3d 872, 893-96 (W.D. Tenn. 2015) (ordering the unconditional release of the petitioner where the state failed to satisfy a conditional writ and permitting the state to rearrest and resentence the petitioner).

However, "[t]he broad discretion of the habeas court in fashioning a proper remedy allows a district court to bar the state from reprosecuting the habeas petitioner in 'extraordinary circumstances.'" *D'Ambrosio v. Bagley*, 656 F.3d 379, 391 (6th Cir. 2011) (quoting *Satterlee*, 453 F.3d at 370).  A habeas court may forbid reprosecution "[i]n extraordinary circumstances,

12

such as when the state inexcusably, repeatedly, or otherwise abusively fails to act within the prescribed time period or if the state's delay is likely to prejudice the petitioner's ability to mount a defense at trial . . . ." *Satterlee*, 453 F.3d at 370 (internal quotation marks, alteration, and citation omitted); *see also Girts v. Yanai,* 600 F.3d 576, 580-86 (6th Cir. 2010), and *D'Ambrosio*, 656 F.3d at 384 (both reaffirming *Satterlee*'s holding that federal courts have the authority to bar a habeas petitioner's reprosecution).[4]

Barring reprosecution, however, is an "'extreme remedy.'" *D'Ambrosio v. Bagley*, 688 F. Supp. 2d 709, 725 (N.D. Ohio 2010) (quoting *Cave v. Singletary*, 84 F.3d 1350, 1359 (11th Cir. 1996) (Kravich, J., dissenting)). While circuit courts generally support the proposition that habeas courts may bar retrial under special circumstances, "it appears that only a few district courts have ever done so outside circumstances where 'the grant of habeas corpus is premised on a theory which inevitably precludes further trial.'" *D'Ambrosio*, 688 F. Supp. 2d at 726 (quoting *DiSimone v. Phillips*, 518 F.3d 124, 127 (2nd Cir. 2008)). Indeed, "even after the state fails to retry the petitioner during the period of time provided by the conditional writ, the state routinely maintains the opportunity to retry the petitioner following his release." *Girts,* 600 F.3d at 585.

Here, Jones cites numerous circumstances that arose during his state resentencing proceedings that he contends entitle him to an order barring a new penalty-phase trial, including: (1) the delay in the start of the proceedings caused by two unexplained judicial recusals; (2) the

---

[4] Nevertheless, Respondent argues that this court lacks authority to prohibit the State from resentencing Jones once he is released because the State failed to satisfy the conditional writ, relying on *Pitchess v. Davis*, 421 U.S. 482 (1975). (Doc. 279 at 6-7.) The Sixth Circuit explicitly rejected this argument, however, in *D'Ambrosio* and affirmed that *Satterlee*'s holding establishing the "extraordinary-circumstances" standard is binding precedent. *D'Ambrosio*, 656 F.3d at 384-85.

delay in determining the validity of Jones' waiver of counsel and continuance of proceedings while the issue was pending; (3) the court-appointed competency examiner's reliance on a report of the defense expert whose prejudicial, racist testimony at the penalty phase of his trial formed the basis of the Sixth Circuit's ruling that defense counsel provided constitutionally ineffective assistance and of the court's conditional writ; (4) the trial court's error in finding Jones competent to represent himself; (5) the delay caused by judicial disqualification proceedings; (6) the alleged prejudicial pre-trial publicity, the prosecutor's alleged violations of the trial court's gag order, and the trial court's failure to rule on the defense's motion for change of venue due to pretrial publicity; (7) Jones' allegedly improper confinement at the Ohio State Penitentiary rather than the Ashtabula County Jail and his difficulties representing himself given the conditions there; (8) the trial court's refusal to use Jones' new name; (9) the State's alleged "misleading representations" to state and federal courts in seeking an extension of the writ's deadline; and (10) the passage of time since Jones' trial and the fact that he has been imprisoned for longer than the statutory minimum penalty for aggravated murder.  (Doc. 278 at 6-37.)

Jones relies for support primarily on the decision of another judge on this court in *D'Ambrosio v. Bagley*, 688 F. Supp. 2d 709 (N.D. Ohio) (O'Malley, J.).  In that case, the petitioner was convicted of aggravated murder and sentenced to death.  *Id*. at 711.  The district court issued a conditional habeas writ based on the prosecution's withholding of exculpatory evidence, ordering the state to retry him within a specified period of time.  *Id*. at 711-12.  The state failed to comply with the writ's deadline, however, and the court issued an unconditional writ.  *Id*. at 712.  It ultimately barred the state from retrying the petitioner upon D'Ambrosio's motion for relief from judgment under Federal Civil Rule 60(b) when it learned that the state had

14

again withheld and delayed the production of potentially exculpatory evidence and failed to inform the defense or state court of a key witness' death for nearly three months – a witness who would have been available for trial during the mandate period. *Id*. at 712-13, 731.[5]  The court concluded, "the State's inequitable conduct led to material prejudice against D'Ambrosio's ability to defend himself at a new trial [and] shocks the conscience." *Id*. at 731.

Far more analogous to this case, however, is the Sixth Circuit's decision in *Lovins v. Parker*, 604 Fed. Appx. 489 (6th Cir. 2015).  In *Lovins*, the petitioner was convicted of second-degree murder. *Id*. at 490.  The district court denied the petitioner's habeas petition, but the circuit court reversed the district court's denial with respect to his sentence. *Id*.  The circuit court issued a conditional writ directing the state to release Lovins if it did not initiate proceedings within a specified time to either resentence him to the presumptive statutory sentence of twenty years or provide a new sentencing hearing. *Id*.  The state failed to act within the mandate period, and the district court ordered the petitioner released but denied his request to prohibit the state from rearresting and resentencing him. *Id*.  Lovins was released but immediately rearrested and was resentenced to twenty years. *Id*.  On appeal, the Sixth Circuit affirmed the district court's refusal to bar resentencing, agreeing with the district court that the facts of the case did not rise to the level of "extraordinary circumstances" under *Satterlee*. *Id.* at 491.  It reasoned:

> Three facts weigh against granting exceptional relief. First, the state's failure to comply with the conditional writ, while troubling, was not committed in bad faith. The state asserted that it failed to act due to miscommunication between state entities. Second, the state's error lasted a relatively short period of time, and the state quickly complied with the writ after the error was brought to its attention. Finally and

---

[5]  The district court also noted that the state's counsel "baselessly attack[ed]" the state trial judge and supplied questionable testimony to the court. *D'Ambrosio*, 688 F. Supp. 2d at 728.

> importantly, Lovins's conviction is valid. Only the length of his sentence is at issue. At the time of release, Lovins had served approximately eleven years and six months of a twenty-three-year sentence. Accordingly, when he was resentenced to twenty years, he had not served time on an invalid conviction or served more than the statutory maximum of twenty years. Similarly, because his conviction was not at issue, the state's delay was not "likely to prejudice the petitioner's ability to mount a defense at trial." *Satterlee*, 453 F.3d at 370 (internal quotation marks omitted).

*Id.*  The court, however, permitted the state to rearrest the petitioner and resentence him. *Id*. at 492.

Similarly, here, the factors Jones sets forth do not constitute "extraordinary circumstances" as contemplated by *Satterlee*.  While the unsuccessful judicial disqualification proceedings initiated by the prosecutor did cause significant delay, the court cannot say that, when viewed in the context of the prosecution's overall conduct during the remand proceedings, that action alone warrants a bar on a resentencing trial.  The State did not engage in the type of inexcusable and prejudicial conduct exhibited in *D'Ambrosio*.  Rather, the state-court record reveals proceedings straining under the weight of a federal court's mandate and exceedingly complex legal, procedural, and administrative issues – such as Jones' competency to stand trial and his request to represent himself in a capital case; the burden on the defense to investigate and present mitigation evidence in a case more than a quarter-of-a-century old; and containing pre-trial publicity amidst intense public interest.  As outlined above, from the start of the proceedings, the state court and both parties were well aware of the writ's deadline and diligent in their efforts to keep the proceedings moving, while also committed to protecting Jones' constitutional rights and

conducting a fair trial.[6]  The proceedings have advanced at a steady pace even since the conditional writ expired.

   Many of the delays in the state-court proceedings were attributable to establishing Jones' competency to stand trial, which Jones' counsel requested, and the validity of Jones' waiver of counsel, which Jones himself initiated through a *pro se* motion.  Defense counsel either requested or agreed to all proceedings related to those two matters, such as evaluations (additional evaluators were required because Jones refused to cooperate after the first evaluation) and hearings, as they were both necessary to protect Jones' rights and reasonable given the complexity of the factual and legal issues involved.  *See United States v. Dubrule*, 822 F.3d 866, 875 (6th Cir. 2016) (requiring competency "'to stand trial or proceed to sentencing'" (quoting *Dusky v. United States*, 362 U.S. 402, 402 (1960) (per curiam))); *Cassano v. Shoop*, 1 F.4th 458, 466 (6th Cir. 2021) ("where a defendant clearly, unequivocally, and timely invokes the right to self-representation, the trial court must inform the defendant of the dangers and disadvantages of self-representation, and conduct a searching or formal inquiry to ensure that [the] waiver [of counsel] is knowing, intelligent, and voluntary") (internal quotation marks and citations omitted). Jones, therefore, suffered  no prejudice from those delays.

-------------------

   [6] The judical recusals, for example, did not cause excessive delay in the initial proceedings, as Jones suggests.  (Doc. 278 at 6-7.)  The state-court proceedings began twelve days after the mandate issued on November 29, 2022, when the State filed a motion to activate Jones' case and to set a date for the resentencing proceeding.  The trial court appointed counsel for Jones four days later, and on December 15, 2022, ordered that Jones be transferred from death row to a prison closer to the court.  The first judge recused herself on December 20, 2022; and the second, on January 3, 2023.  The next judge was assigned that same day and still presides over the case.  Two days later, he set a status conference for January 27, 2023.

Moreover, as Respondent points out, the defense itself, through counsel, filed a motion to continue the sentencing proceedings with the trial court and a motion to extend the writ's deadline in this court, stressing the difficulties in gathering and presenting mitigation evidence and witnesses in a twenty-five-year-old capital case. Defense counsel also requested a continuance of a status conference and the hearing regarding Jones' self-representation request. The State did not oppose these requests.

In addition, Jones complains that Respondent's and the prosecution's communications to the state and federal courts regarding their plans to seek an extension of the writ's deadline or otherwise satisfy the writ were misleading and an attempt to evade the oversight of the federal courts. (Doc. 278 at 38-44.) While the communications at issue were confusing at best and misleading at worst, ultimately, Respondent filed two motions for additional time with the proper court, the circuit court, which granted the first, providing an extra 190 days. The communications in and of themselves, therefore, did not result in any delays and did not prejudice Jones.

Also critical here, as in *Lovins* and unlike *D'Ambrosio*, is the fact that only Jones' sentence is at issue; his convictions remain valid. Any delays, therefore, were not "'likely to prejudice [Jones'] ability to mount a defense at trial.'" *Lovins,* 604 Fed. Appx. at 491 *(*quoting *Satterlee*, 453 F.3d at 370). And Jones "has not served time on an invalid conviction or . . . more than the statutory *maximum* [possible sentence.]" *Id.* (emphasis added); *see also Means*, 136 F. Supp. 3d at 894. Under current Ohio law, when a federal court vacates a death sentence "because of error that occurred in the sentencing phase of the trial," the trial court that originally sentenced the offender must conduct a new sentencing hearing, following proper procedures as outlined by statute governing sentencing for capital offenses, and impose a sentence of death, life

18

imprisonment, or an indefinite term consisting of a minimum term of thirty years and a maximum term of life imprisonment. Ohio Rev. Code § 2929.06(B). If the sentencer decides to impose a sentence other than death, it must impose one of the sentences of life imprisonment that could have been imposed at the time of the offense for which he was sentenced to death, determined as specified by statute, or an indefinite term consisting of a minimum term of thirty years and a maximum term of life imprisonment that is determined as specified by statute. *Id*. At the time of Jones' offense, in November 1997, the available sentences for capital offenses other than death were life imprisonment without parole, with parole eligibility after serving twenty years, or with parole eligibility after serving thirty years. Ohio Rev. Code § 2929.03(C)(2)(a)(i) (1996 H.B. 180, eff. 1-1-97). Therefor, none of these sentences would be greater than the maximum sentence possible, death.

Nevertheless, Jones argues that he is entitled to a bar on a new sentencing trial because he has "surpassed the statutorily authorized *minimum* sentence triggering parole eligibility," which he states is a sentence of life imprisonment with eligibility of parole after twenty-five years.[7] (Doc. 278 at 47-48 (emphasis added).) Or, at a least, he claims, this court should forbid the State from seeking the death penalty. (*Id*. at 1.) While the court recognizes the equitable appeal of Jones' argument, Jones does not cite, and this court cannot find, any authority that allows it to prohibit the State on this ground from conducting a resentencing proceeding or seeking the death penalty pursuant to a circuit court's mandate when that procedure and sentence are expressly

---

[7] The court notes, however, that, as explained above, in 1997, the earliest time of eligibility for parole after receiving a life sentence for a capital offense was twenty years. That changed to twenty-five years in 2005. *See* Ohio Rev. Code § 2929.03(C)(2)(a)(i) (2004 H.B. 184, eff. 3-23-05).

19

permitted under Ohio statutory law.  *See* Ohio Rev. Code §§ 2929.03(C)(2)(b), 2929.06(B)*;*

*Austin v. Jackson*, 213 F.3d 298, 300-01 (6th Cir. 2000) (challenges to a state court's

interpretation and application of state sentencing laws generally are not cognizable in federal

habeas corpus, and "[a]s long as the sentence remains within the statutory limits, trial courts have

historically been given wide discretion in determining 'the type and extent of punishment for

convicted defendants'" (quoting *Williams v. New York*, 337 U.S. 241, 245 (1949))).  Jones also

argues that "[t]he passage of time since [his] first trial . . . will compromise the vitality of [his]

defense."  (Doc. 278 at 48.)  But, again, Jones seeks to mitigate his sentence in these resentencing

proceedings, not defend his convictions.  *See also Girts,* 600 F.3d at 584 n.5 (stating the court's

"belief that a long prison term . . . [does] not automatically lead to barring retrial").

        Finally, as Respondent further argues, many circumstances Jones points to are not

necessarily relevant to this motion.  (Doc. 279 at 10.)  *Satterlee*'s extraordinary-circumstances

standard clearly focuses on the nature of the  *state's* conduct in "*fail[ing]  to act* within the

prescribed time period" and whether the "*state's delay*" prejudiced the petitioner.  *Satterlee*, 453

F.3d at 370 (emphasis added).  The Sixth Circuit framed the issue in *Lovins* as: "whether the State

of Tennessee should be barred from rearresting and resentencing Lovins because its failure to

comply with the terms of our writ of habeas corpus was 'inexcusable.'" *Lovins*, 604 Fed. Appx. at

490.  The issue before this court is not whether a new and separate constitutional error occurred

during the mandate period, which clearly would present exhaustion issues.  *See* 28 U.S.C. §

2254(b) and (c) (AEDPA requires that state prisoners exhaust all state remedies, or have no

remaining state remedies, before a federal court will review a petition for a writ of habeas corpus).

The Sixth Circuit touched on this issue in its decision in the *D'Ambrosio* case:

Further, in raising the issue of Espinoza's death in his Rule 60(b) motion, D'Ambrosio was not seeking an unconditional writ barring reprosecution of a new and never-before-raised due process claim, but was instead seeking the modification – in order to bar reprosecution – of the unconditional writ based on the *Brady* violation and the failure to comply with the conditional writ. This is the sort of argument envisioned by the "extraordinary circumstances" standard, which permits barring reprosecution "if the state's delay is likely to prejudice the petitioner's ability to mount a defense at trial." *Satterlee*, 453 F.3d at 370. D'Ambrosio argued that the loss of a key witness was a collateral consequence of the state's noncompliance with the original writ based on the *Brady* violation that had occurred but was not known to the court or the parties when the court originally issued its unconditional writ, and that this constituted the sort of "extraordinary circumstances" sufficient to bar reprosecution. The district court had jurisdiction to make this determination.

*D'Ambrosio*, 656 F.3d at 389.

Accordingly, Jones' reliance on the "numerous constitutional errors . . . percolating in [the] retrial proceedings" for purposes of this motion is misplaced. (*See, e.g.*, Doc. 278 at 46-47.) His allegations relating to the trial court's ruling on Jones' competency to stand trial and request to represent himself, the continuance of proceedings while the self-representation request was pending, judicial bias based on the trial court's refusal to use Jones' new name, and prejudicial pretrial publicity may better form the basis of claims in a second-in-time habeas petition once those claims are exhausted in state court.[8]  Similarly, Jones' allegations concerning deficiencies in

---

[8] In an apparent attempt to avoid this exhaustion problem and align his case with *D'Ambrosio*, Jones argues that the court-appointed competency examiner's reliance on a report of the same defense expert whose prejudicial, racist testimony at the penalty phase of his trial formed the basis of the ineffective-assistance-of-counsel violation and resulting conditional writ "[t]ranspos[ed] the same constitutional error that occurred in his first capital sentencing proceeding onto his retrial [in violation of] due process." (Doc. 278 at 17 n.12.)  But Jones' claim here is new; it is not a continuation of the constitutional violation that occurred in his original trial, as in *D'Ambrosio*.  The error at Jones' trial was ineffective assistance of counsel relating to defense counsel's presentation of an expert's racialized testimony to the jury regarding Jones' diagnosis and propensity for violence for sentencing purposes, which is different from a due process violation based on a court-appointed competency evaluator's reliance *in part* (she also, for example, conducted a lengthy interview of Jones) on the expert's report for a pretrial competency evaluation,

21

his current prison conditions can be asserted in a civil rights action under 42 U.S.C. § 1983.  *See Nelson v. Campbell*, 541 U.S. 637, 643 (2004) (constitutional claims that challenge the conditions of a prisoner's confinement fall outside of the core of habeas corpus and may be brought pursuant to a separate civil rights action under 42 U.S.C. § 1983).

Accordingly, Jones has not demonstrated that his case presents "extraordinary circumstances" such that this court should prohibit the State from conducting a new penalty-phase trial as mandated by the Sixth Circuit or from seeking the death penalty.

### CONCLUSION

For the reasons stated above, Petitioner Odraye Jones' Motion to Issue Unconditional Writ of Habeas Corpus and Bar Retrial is granted as to Jones' request to make the conditional writ of habeas corpus, issued by the Sixth Circuit Court of Appeals on August 22, 2022, an unconditional writ of habeas corpus.  The motion is denied as to Jones' request that the State be prohibited from conducting a new penalty-phase trial or from seeking the death penalty.

Accordingly, the court orders Respondent to vacate the death sentence imposed by the Ashtabula County, Ohio, Court of Common Pleas in Case No. 1997 CR 00221 and unconditionally release Jones from custody no later than five business days from the date of entry of this Order.  The State is not prohibited from rearresting and resentencing Jones on the convictions in that same case.

---

which is not relevant to the underlying mitigation and sentencing issues in Jones' resentencing proceedings.  Jones wishes to avoid the often protracted process of state-court direct appeals and post-conviction proceedings and federal habeas proceedings (*see id*. at 47), but AEDPA still governs this habeas case.

22

1:03-cv-1192, *Jones v Bradshaw*


      IT IS SO ORDERED.


                      */s/ SOLOMON OLIVER, JR.*
                      UNITED STATES DISTRICT JUDGE

February 29, 2024

23